**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| CASHMERE AND CAMEL HAIR MANUFACTURERS INSTITUTE,<br><br>              Plaintiff,<br>v.<br><br>AMAZON.COM, INC. and<br>CS ACCESSORIES, LLC<br><br>              Defendants. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff Cashmere and Camel Hair Manufacturers Institute (hereinafter "CCMI" or the "Cashmere Institute"), an international trade association of Cashmere manufacturers, wholesalers and retailers, for its Complaint against the named defendants herein (collectively, the "Defendants"), hereby alleges the following:

## INTRODUCTION

1.    This action arises out of the Defendants' large-scale distribution, advertising, marketing and sale, both in Massachusetts, throughout the United States, and internationally, of counterfeit garments falsely, misleadingly, and damagingly represented, branded and advertised by the Defendants to be, "100% Cashmere Made in Scotland," when in fact they are not Cashmere, and are not made in Scotland, but are actually 100% Acrylic, a much less expensive, petroleum-based, and more flammable fiber, made elsewhere, in violation of both federal and Massachusetts state laws pertaining to false advertising, false designation of origin, unfair competition, trademark dilution, intellectual property rights, and contract law.

## PARTIES

2.      CCMI is a nonprofit corporation, organized as a trade association under the laws of New York with a principal place of business in Massachusetts, whose purpose is to advance the interests of its members, who are some of the world's leading manufacturers of fine Cashmere fiber, fabric and garments, and the Cashmere industry generally.

3.      CCMI's activities and status as a leading Cashmere industry trade association, its legal standing to pursue injunctive relief to protect the interests of its members, and its active role in monitoring and providing services to the Cashmere industry, has been recognized by the U.S. Court of Appeals for the First Circuit in a series of decisions over the last several decades, first in 1986,[1] then again in 2002,[2] and more recently in 2014.[3]

4.      Defendant Amazon.com, Inc. ("Amazon") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109-5210, that markets and sells products to retail consumers all over the world through internet websites such as www.amazon.com using various trademarks and brand names, including "Amazon," "Amazon Fashion," and "Cashmere Made in Scotland."

---

[1]    *See Camel Hair & Cashmere Institute of America v. Associated Dry Goods Corp*., 799 F.2d 6, 12-15 (1st Cir. 1986)("we hold that plaintiff does have standing to represent its members in this suit. … We hold that the plaintiff is entitled to preliminary injunctive relief. We are satisfied that the sale and manufacture of cashmere products by plaintiff's members establishes that they have an interest in the reputation of cashmere generally.")

[2]    *See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave*., 284 F.3d 302, 320 (1st Cir 2002)("Based on the foregoing analysis, a reasonable factfinder could conclude that the defendants' material mislabeling of their garments deceived the consuming public, enabled defendants to lower their garment prices, and caused Packard to lose sales.")

[3]    *See Cascade Yarns, Inc. v. Knitting Fever, Inc. and nonparty appellee Cashmere & Camel Hair Mfrs. Inst.,* 755 F.3d 55 (1st Cir. 2014)("The recipient of the discovery request at issue in this case, Cashmere and Camel Hair Manufacturers Institute ("CCMI"), is a nonprofit corporation that offers confidential tests of the fiber content of cashmere samples to its members, as well as retailers and suppliers...")

5.      Defendant CS Accessories, LLC is a limited liability company organized and existing under the laws of the State of New Jersey with its principal place of business at 725 River Road, Edgewater, NJ 07020-1149 that sells a variety of products, including garments, under a variety of brand names, including some for which it has registered or is attempting to register trademarks, such "City Scarf," Pick A Scarf," and "Cashmere Made in Scotland."

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, because it is a civil action involving claims arising under the laws of the United States, including the Lanham Act, 15 U.S.C. § 1051 *et seq*., and the Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1338(b) and 1367(a) in that they form part of the same case or controversy that gives rise to Plaintiff's claims under the laws of the United States.

7.      This Court also has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are diverse in citizenship.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims at issue occurred in this judicial district and division, and because the Defendants are subject to the Court's personal jurisdiction with respect to this action.

9.      This Court has personal jurisdiction over each of the Defendants because the causes of action asserted herein arise from the Defendants transacting business in the Commonwealth of Massachusetts, contracting to supply and actually supplying services or things

in the Commonwealth of Massachusetts, and causing tortious injury in the Commonwealth of Massachusetts by virtue of their acts and omissions.

10.     Defendants are also subject to personal jurisdiction in the Commonwealth of Massachusetts and this District pursuant to Mass. Gen. Laws ch. 223A §3 because they (a) have sold numerous products into the Commonwealth and this District; (b) have caused tortious injury within the Commonwealth and this District; (c) have practiced the unlawful conduct complained of herein, in part, within the Commonwealth and this District; (d) regularly conduct and solicit business within the Commonwealth and this District; (e) regularly and systematically direct electronic activity into the Commonwealth and this District with the manifest intent of engaging in business within the Commonwealth and this District, including the sale and/or offer for sale to Internet users within the Commonwealth and this District; and (f) enters into contracts with residents of the Commonwealth and this District for the sale of products.

## FACTUAL ALLEGATIONS

11.     CCMI's membership consists of major Cashmere producing companies headquartered in the United States, Scotland, England, Italy, France, Germany, Japan, China, Hong Kong, and India that manufacture Cashmere fiber, fabric and garments, including 100% Cashmere scarves, and that advertise, distribute and sell those products throughout the United States and abroad, including in Massachusetts.  CCMI's core mission is to protect the good name and reputation of Cashmere as a fine specialty fiber, to promote the use of cashmere fiber and fabric, and to safeguard the interests of CCMI members, and the Cashmere industry generally, by educating the public, retail dealers and garment makers about what is or is not legitimate cashmere, and by challenging the sale and distribution of fabric and garments that are falsely labeled as Cashmere, when in fact they are not.

12.     In carrying out its mission, CCMI engages in a wide range of activities worldwide, and maintains a website at www.cashmere.org on which it distributes information about those activities, and about important issues relevant to the Cashmere market, including sustainability, labeling integrity, sources of reliable product testing, and the market monitoring activities that it uses to help ensure the integrity of the Cashmere market and Cashmere products, to protect the legitimate interests of its members, and to provide services and information to retailers and other consumers of Cashmere products.

13.     CCMI's activities in these areas include, but are not limited to, public dissemination of information about Cashmere products and the Cashmere market, participation in international Cashmere industry conferences and working groups, cooperation with U.S. Government agencies and international standard-setting bodies on matters of concern to the Cashmere industry and its members, operation of testing programs in which third parties can submit fabric samples to CCMI for analysis to determine if they are genuine Cashmere, a round trial testing program in which CCMI periodically evaluates the ability of testing laboratories worldwide to accurately determine the Cashmere content, if any, of fabric samples whose contents are already known to CCMI, and a garment purchasing and testing program to help ensure accurate labeling of Cashmere products (the "CCMI Purchasing Program").

14.     The CCMI Purchasing Program is one in which CCMI itself buys garments in the marketplace that are advertised, represented or labeled as being made of Cashmere, in whole or in part, and sends samples of those purported Cashmere garments to qualified independent professional textile testing laboratories to determine if they actually are made of or contain Cashmere.  Then, if the garments are found to be mislabeled, CCMI notifies the distributors and

advertisers of those garments that they are mislabeled, demands that they be withdrawn from sale, and sometimes takes legal action to stop the mislabeling

15.     As part of the CCMI Purchasing Program, CCMI has recently purchased from Amazon a total of eighteen (18) random samples, four (4) in Japan and fourteen (14) in the U.S., of a specific group of purported Cashmere garments, approx. 6 ft. by 1 ft. scarves, that have been and are being represented and advertised by Amazon as "100% Cashmere" and "Cashmere Made in Scotland," and has had them analyzed by competent experts who have found that none of them are 100% Cashmere.  In fact the garments are not Cashmere at all, and were not made in Scotland, but rather are made of 100% Acrylic, – a petroleum-based, synthetic fiber that is much cheaper, less warm and more flammable than Cashmere, and contains harmful chemicals such as dimethylformamide and acrylonitrile that are not present in Cashmere.

16.     The large group of garments that the above samples exemplify (hereinafter the "Purported Cashmere Garments") are being falsely and deceptively advertised, represented, and offered for sale by Amazon in Massachusetts, throughout the United States, and all over the world, including but not limited to in the following manner:



using the listing "**Brand: Cashmere Made in Scotland**, which Amazon claims ownership of it since

it is not a registered trademark, and in the following manner:



and in the following manner also using the brand listing "**Brand: Cashmere Made in Scotland**":



and in the following manner also using the also using the brand listings "Amazon Fashion" and

"**Brand: Cashmere Made in Scotland**, and the representation "2-PLY 100% Cashmere Scarf Elegant

Collection Made in Scotland":



and in the following manner also using the brand listings "Amazon Fashion" and "**Brand: Cashmere Made in Scotland,**" and the phrase "Elegant Collection Made in Scotland":



with the marks "Amazon Fashion" and the listing "**Brand: Cashmere Made in Scotland**" in which, again, Amazon claims an ownership interest, because it is not yet a registered trademark of any user, above the words "100% Cashmere."

17.     The aforesaid false and deceptive advertisements and false and deceptive misrepresentations and offers for sale of the Purported Cashmere Garments on the Amazon websites (collectively, the "Amazon Ads") sometimes expressly state, like the one below (see lower right), that the Purported Cashmere Garments are "Sold by" Amazon:



18.     In other instances, the Amazon Ads, which appear under the heading "Amazon Fashion," use the words "Sold by" in the lower right followed by the name of a purported vendor, referred to as City Scarf™, that the Ads suggest sold or supplied the goods to Amazon:



and some of the Purported Cashmere Garments purchased by CCMI from Amazon were accompanied, when delivered to CCMI, by documents such as the following:







In other instances, the Amazon Ads appear under the heading "Amazon Fashion," also using the "**Brand: Cashmere Made in Scotland**" listing, with the words "Sold by" in the lower right followed by the name of another purported vendor, referred to as "Pick A Scarf," that the Ads suggest sold or supplied the goods to Amazon, including but not limited to in this way:



and some Purported Cashmere Garments purchased by CCMI from Amazon were accompanied by documents such as the following referring to them as being "Sold by Pick A Scarf":



19.    The terms "City Scarf" and "Pick A Scarf" are registered trademarks of defendant CS Accessories, LLC, 725 River Road, Ste 32-134, Edgewater, NJ 07020-1149 ("CS Accessories"), as per the public records attached to as Exhibit A to the Affidavit of James Coleman filed herein.  The references in the above ¶18 to "City Scarf" and "Pick A Scarf" are actually references to defendant CS Accessories.

20.    In short, the Purported Cashmere Garments, which are 100% Acrylic, are being falsely and deceptively advertised, represented, and offered for sale on Amazon's websites as "100% Cashmere" by both Amazon and its vendor CS Accessories, including but not limited to in the manner shown in ¶18 above, and including but not limited to in the following manner:



under the heading "Amazon Fashion," and in the following manner:



and in the following manner, with the use of high quality videotapes with background music:



showing the scarves being worn by children and families:



https://www.amazon.com/City-Scarf-Cashmere-Checkered-cotland/dp/B08NCG6RXQ?th=1 and

prominently and repeatedly representing that the scarves are "100% Cashmere," when they are

not, and in fact are 100% Acrylic containing acrylonitrile and other harmful synthetic chemicals,

believed by many to be carcinogenic in sufficient quantities, that are not present in Cashmere.

21.     Defendant Amazon is itself an information content provider that created and developed, in whole or in part, the aforesaid false and misleading information that has been and is being transmitted to the public in the Amazon Ads for the Purported Cashmere Garments. Amazon is also the retail seller of the Purported Cashmere Garments.  Among other things, in return for profiting from each sale of the Purported Cashmere Garments, which it does, Amazon provides to consumers, in connection with their acquisition of the Purported Cashmere Garments, all the services traditionally provided by retailers.  It accepts and processes orders and payments for the Purported Cashmere Garments as a retailer does. It arranges for their delivery to each purchasing consumer (either itself or through a third party delivery service) as a retailer does. It offers various satisfaction guarantees and price discounts concerning them as a retailer does. It takes possession of and holds some Purported Cashmere Garments on consignment, as a retailer often does.  It directs consumers who evidence an interest in Cashmere garments to the Purported Cashmere Garments as a retailer normally would, and it relies on its worldwide reputation to sell them - as any well-known retailer does.

22.     In this regard, after CCMI received a laboratory test report on one of the Purported Cashmere Garments purchased in Japan, showing that it was 100% Acrylic and not "100% Cashmere" as labeled, CCMI contacted the shop in Japan that had shipped it to CCMI,  which was the Sakura Global Shop in Kochi City, Kochi Prefecture, 781-0314 Japan ("Global"), to advise them that the garment was mislabeled, and to inquire where they had obtained it.  In response, Global's representative, Aya Yokota, informed CCMI that they had purchased the Purported Cashmere Garment from "Amazon.com," and stated that "We understood that Amazon was strictly prohibited from selling any misrepresented products," and "we deeply apologize for the inconvenience caused by the lack of awareness of the problem of mislabeling

of Cashmere products on Amazon platform."   Ms. Yokota also provided CCMI with the

following information, in writing, about Purported Cashmere Garment:

> ・ ・ ・ ・ The ・ Source ・ of ・ this ・ product ・ ・ ・ ・ ・
> Amazon ASIN：B07LD3JTZ6】
> Brand：Cashmere Made in Scotland
> Description ：100% Cashmere Scarf Made in Scotland Wool Buffalo Tartan Windowpane Check Plaid
> ・Source ：Amazon.com
> ・URL：
> ・The sender of the product ：Amazon.com
> ・The Vender of the products：**Pick A Scarf**
> 【Vender's Information】
> Vender：**Johnny Freyre**
> Address ：
> 725 RIVER RD STE 32-134
> EDGEWATER
> NJ  07020-1171  USA

The "725 River Road, Edgewater, NJ" address is the address of the headquarters of defendant CS

Accessories LLC, and the above hyperlink,  https://www.amazon.com/gp/product/B07LD3JTZ6,

takes one to the following Amazon Ad:



23.    The Purported Cashmere Garments, which in reality are 100% Acrylic, all have

glued-on cloth labels affixed to them which bear the U.K. national flag, the "Union Jack," the

words "*100% Cashmere*" in italics and underlined, the words "Made in Scotland" underneath

that in plain arial-like typeface, and the words "DRY CLEAN OR HAND WASH COLD" or "DRY CLEAN OR HANDWASH COLD" in smaller print all-caps lettering under that, with the overall appearance as follows:





and as follows:





or as follows, using the same symbol and wording printed against a darker background, as below:





24.     The above representations on the labels of the Purported Cashmere Garments that they are "100% Cashmere," which are part of the Defendants' advertising of these garments, are false, misleading and deceptive because the Purported Cashmere Garments are not Cashmere. CCMI has purchased a large number of these Purported Cashmere Garments over the last year, and has had all of them tested, and none of them has been found to contain any Cashmere. The above representations on the labels of the Purported Cashmere Garments that they are "Made in Scotland" are also false, misleading and deceptive, and are false designations of origin as to the Purported Cashmere Garments, because these garments are not made in Scotland.

25.     Defendant Amazon was given actual notice that these Purported Cashmere Garments were mislabeled as to their Cashmere content, and were not Cashmere, both last year (2020) and the year before (2019), and failed to take effective action to correct this problem, or to remove the goods from sale on its websites, or to stop advertising them as "100% Cashmere" and "100% Cashmere Made in Scotland." Instead, Amazon expanded and increased its marketing and sale of the Purported Cashmere Garments, to the point where they now have a very substantial presence on Amazon's websites throughout the U.S. and abroad, notwithstanding the information they have received that these garments are not Cashmere.

26.     Specifically, in February of 2019, as part of the CCMI Purchasing Program, CCMI's then-USA Representative David Trumbull purchased two of the Purported Cashmere Garments from the Amazon website – each represented by Amazon to be "100% Cashmere," and

each bearing the above false labels, and designated them Sample Nos. USA 19.007 CA and USA 19.008 CA. When tested by a competent testing lab they were both found to be 100% Acrylic, not Cashmere.

27.     On March 25, 2019, Mr. Trumbull, acting on behalf of the Cashmere Institute, sent Amazon a formal written notice of mislabeling demanding that such mislabeled Purported Cashmere Garments be removed from sale or properly labeled as to their Cashmere content, and requesting that CCMI be informed within seven days of Amazon's receipt of the notice what "corrective actions" Amazon would take. Specifically, he sent that correspondence to Amazon Program Manager Melissa Gruchatz via email on March 25, 2019, advising her that the Purported Cashmere Garments were being falsely advertised, and should be removed from sale or properly labeled. In relevant part, that March 25, 2019 correspondence to Amazon stated:

> On February 26, 2019, I purchased two scarves from Amazon vendor, Pick A Scarf, Order #114-1504615-2633848. **Each scarf was advertised and labeled as 100% cashmere.** The scarves were sent to an independent textile testing laboratory for analysis, **which revealed each to be 100% acrylic.** This **mislabeling** is a violation of the U.S. Federal Trade Commission Rules and Regulations under the Wool Products Labeling Act of 1939 (see 16 CFR 300).
>
> **Please remove these articles from sale or properly label as to fiber content. Please inform CCMI within seven days** of receipt of this letter **what corrective actions you have taken**.

(emphasis added). CCMI was prepared at that time, and made clear to Amazon that it was prepared to take legal action against Amazon to force the removal of these garments from sale.

28.     On March 26, 2019, however, Amazon replied to Mr. Trumbull's aforesaid March 25, 2019 correspondence by agreeing in writing, and promising, to "prevent the sale of these scarves to customers until the fiber content is properly labeled" within five (5) business days. CCMI accepted that agreement, and in consideration of it, CCMI refrained at that time from

taking further action against Amazon, from making additional purchases and doing additional testing of the Purported Cashmere Garments, and from taking other actions that it otherwise would have taken.

29.     Upon receipt of Amazon's March 26, 2019 reply, a binding agreement between Amazon and CCMI was created for Amazon to prevent the further sale of the mislabeled Purported Cashmere Garments until their fiber content was properly labeled (the "Amazon-CCMI Agreement").  At that time, CCMI had also received, and understood that it had received, a binding promise from Amazon on which it (CCMI) could and did reasonably rely on to its detriment, and was reasonably relying on, for Amazon to prevent the further sale of the mislabeled Purported Cashmere Garments until their fiber content was properly labeled.

30.     In its aforesaid March 26, 2019 reply to Mr. Trumbull's March 25, 2019 correspondence, Amazon also affirmatively represented to the Cashmere Institute that it had already taken the necessary steps "to prevent the sale of these scarves to customer until the fiber content is properly labeled" within "5 business days" by "updating" its "filters."  Specifically, in that March 26, 2019 reply, Amazon official Amy Belete affirmatively represented to CCMI that:

> **I have updated our filters to prevent the sale of these scarves** to customers **until the fiber content is properly labeled**. Due to the size **of our catalogue**, please allow up to 5 business days for our filters to take effect.

(emphasis added).  CCMI reasonably relied on this representation, and Amazon's aforesaid promise, by taking no further action against Amazon at the time, by not making additional purchases and not doing additional testing of the Purported Cashmere Garments at the time, and by not taking other actions that it otherwise would have taken.

31.     In early 2020, however, CCMI again found examples of the Purported Cashmere Garments being offered for sale on the Amazon website with the same "100% Cashmere" "Made

in Scotland" representations and labels.   It purchased one of them as part of the CCMI Purchasing Program, sent it to a competent textile testing laboratory for content analysis, and again received a report back from the lab that the garment was 100% Acrylic, not Cashmere.  In March of 2020, CCMI contacted Amazon and informed it that the Purported Cashmere Garments were still being offered for sale on the Amazon website with the false representations that they were "100% Cashmere" and "Made in Scotland."  In response, Amazon claimed that CCMI had no "standing" to challenge the mislabeling, but again indicated it would address the problem, but did not.

32.     Thereafter, in 2021, the Cashmere Institute expanded its purchases of random samples of the Purported Cashmere Garments on the Amazon website -- purchasing four (4) in Japan and another fourteen (14) in Massachusetts over the past nine (9) months, all of which, when tested, were found to contain no Cashmere.  During that process, CCMI began to observe that contrary to the Amazon-CCMI Agreement, Amazon had increased, rather than stopped, its advertisement, marketing and sale of the falsely and deceptively advertised, falsely represented, and mislabeled Purported Cashmere Garments on the Amazon website.   CCMI also observed that defendant CS Accessories was continuing to do so as well.

33.     The Defendants' aforesaid and hereinafter-described false and deceptive representations, false and deceptive advertising, false and deceptive designations of origin, and misuse of the "Cashmere" and "Cashmere Made in Scotland" brand names and purported marks in connection with the marketing and sale of the Purported Cashmere Garments (collectively, the "Defendants' Unlawful Acts") have proximately caused, are proximately causing, and unless stopped will continue to proximately cause significant, immediate, and irreparable harm to the members of the Cashmere Institute (the "CCMI Members") in part by reducing demand for their

legitimate but necessarily more expensive competing real Cashmere products, which include competing Cashmere scarves, because the material used to make the counterfeit Purported Cashmere Garments is far less expensive than real Cashmere, can be produced at only a fraction of the cost of real Cashmere products, and therefore can be offered for sale and sold at much lower prices which divert potential consumers away from purchasing CCMI Members' products.

34.    The Defendants' Unlawful Acts have also proximately caused, are causing, and unless stopped will continue to cause significant, immediate, and irreparable harm to the CCMI Members and to CCMI itself by damaging the reputation of the genuine Cashmere that CCMI Members use to make their products, and that it is CCMI's commercial business to promote. This damage is due in part to the fact that real Cashmere, unlike Acrylic, is a lightweight natural animal fiber that is an excellent insulator, does not melt when exposed to flame, is self-extinguishing, and is ideally suited for use as warm Winter clothing – whereas the Acrylic that the Defendants are passing off as "Cashmere" is a less warm, petroleum-based, synthetic fiber which is more flammable, and is not self-extinguishing (*i.e.* it will burn continuously once set alight, unlike Cashmere which will self-extinguish when removed from flame), and is made with fossil fuel based chemicals that can be absorbed through the skin, among other negative characteristics of 100% Acrylic clothing.

35.    This harm to CCMI Members, and to CCMI itself, also includes the fact that the reputation of Cashmere as a fine fiber and fabric, and the reputation of Cashmere garments – which is that they are uniquely soft and elastic, lightweight, warmer than wool, durable, breathable, moisture wicking (making them  comfortable in all climates, even warm ones), non-scatchy, wrinkle-resistant, elegant in appearance (because of their natural draping due to their light weight and wrinkle resistance), hypoallergenic, and fire resistant – is sullied and diminished

by fake garments like the Purported Cashmere Garments on the Amazon websites made of 100% Acrylic, which do not wear or perform as well as real Cashmere products do. The mislabeling of the Purported Cashmere Garments as "Made in Scotland" when they are not causes similar harm because Scotland has a good reputation for high quality spinning and knitting of genuine Cashmere garments.

36.     The continued marketing and sale of the Purported Cashmere Garments, and the false advertising and promotion of them as "100% Cashmere" and "Made in Scotland," has already caused and is causing all of the above continuing harm – which is virtually impossible to quantify in terms of monetary damages but is serious and irreparable – both to the Members of the Cashmere Institute and to CCMI itself, which depends on the good name and reputation of Cashmere in order to maintain its own good name and reputation, and in order to be effective in providing the services it provides both to the public and its Members.

37.     The Defendants' Unlawful Acts have also caused, are causing, and unless stopped will continue to cause significant, immediate, and irreparable harm to the Cashmere Institute itself, and its commercial interests, by counteracting and undermining the commercial services it offers, counteracting and undermining its commercial efforts to preserve and protect the good name, reputation and integrity of Cashmere as a high quality fine specialty fiber, and undermining its commercial efforts to promote the use of Cashmere fiber, fabric, and garments notwithstanding their greater cost, and to safeguard the commercial interests of CCMI members, the Cashmere industry, and the general public.

38.     The Defendants' Unlawful Acts have also caused, are causing, and unless stopped will continue to cause significant and irreparable harm to the Cashmere Institute itself and its commercial interests by damaging CCMI's good name and reputation, its credibility in the

marketplace, and its ability to provide its commercial services effectively (since many of them depend on the voluntary cooperation of third parties), and by diluting, blurring and tarnishing its famous name and trademark, the "Cashmere and Camel Hair Manufacturers Institute," through their use of the fraudulent and deceptive trademark "Cashmere Made in Scotland" to help them advertise, market and sell the counterfeit Purported Cashmere Garments, and convince unsuspecting buyers that those garments are genuine 100% Cashmere.

39. Defendants' Unlawful Acts are also causing additional irreparable harm to the reputation of genuine Cashmere fabric and garments (including scarves) that are actually being manufactured in Scotland, both by CCMI members and other Cashmere producers there. Genuine Cashmere made in Scotland by these producers has an long-standing and excellent reputation due to Scotland's long history of producing high quality Cashmere fiber, fabric and garments. To pass off 100% Acrylic scarves having all the inferior properties of Acrylic described above as "100% Cashmere Made in Scotland," or as "Scottish," necessarily damages and creates an ongoing risk of irreparable harm to that reputation, because those scarves will not perform like real Cashmere, and in fact carry with them flammability and synthetic chemical risks not present in genuine 100% Cashmere.

40. The Defendants' Unlawful Acts are also materially damaging to the public interest, which lies in not having millions of consumers deceived outright into believing that the Purported Cashmere Garments are genuine "100% Cashmere" garments made in Scotland, when in fact they are neither, and are instead something much less desirable and much less valuable. In this regard, the Defendants' Unlawful Acts, to the extent they are occurring outside the United States, are having a substantial effect on United States commerce, and both Defendants are citizens of the United States.

**CAUSES OF ACTION**

**COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. §1125)**

41.     CCMI hereby incorporates by reference, as though fully set forth herein, all of the allegations set forth in all of the other paragraphs of this Complaint.

42.     The Defendants' Unlawful Acts as described hereinabove constitute the using of literally false statements, and literally false descriptions and representations of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), that are likely to deceive, and do in fact deceive, the public into believing, falsely, that the Purported Cashmere Garments are actually "100% Cashmere."

43.     The Defendants' Unlawful Acts as described hereinabove constitute the using of literally false statements, literally false descriptions and representations of fact, and literally false designations of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), that are likely to deceive, and do in fact deceive, the public into believing, falsely, that the Purported Cashmere Garments were actually "Made in Scotland."

44.     The Defendants' Unlawful Acts as described hereinabove constitute the using by each Defendant, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), of words, terms, names, symbols, and devices, and false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such Defendant with another person, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities by another person.

45.     The Defendants' Unlawful Acts as described hereinabove constitute the using by each Defendant, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), of words,

terms, names, symbols, and devices, and false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of its or both Defendants' goods, services, or commercial activities.

46.    The Defendants' Unlawful Acts as described hereinabove have caused, are causing, and unless enjoined will continue to cause immediate and irreparable harm to the Cashmere Institute and its Members, to their good will and reputation and the good will and reputation of their Cashmere products and services, and to the public.  CCMI has no adequate remedy at law for this harm, nor do its members.

47.    In the course of committing the Defendants' Unlawful Acts as described hereinabove, each Defendant made and is making false or misleading descriptions of fact or representations of fact in commercial advertisements about its own or another's product that was and is  material, in that it is likely to influence the purchasing decision of consumers. Each such misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; and each Defendant has placed the false or misleading statement in interstate commerce.  Plaintiff CCMI's Members are competing with the Defendants, and have been and are likely to be injured as a result of the Defendants aforesaid misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with their products.

48.    The Defendants' Unlawful Acts as described hereinabove described were knowing, willful, and egregious, and have continued despite the Defendants knowledge that they were illegal.

49.    CCMI is entitled to injunctive relief, its reasonable attorneys' fees, and the costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §1116, 1117.

## COUNT II
### Violation of M.G.L. c. 266, § 91
### ("Untrue and misleading advertisements; prohibitions")

50.     CCMI hereby incorporates by reference, as though fully set forth herein, all of the

allegations set forth in all of the other paragraphs of this Complaint.

51.     Section 91 of Massachusetts General Laws chapter 266 provides that

> Any person who, with intent to sell or in any way dispose of merchandise,
> … offered by such person, directly or indirectly, to the public for sale or
> distribution, or who, with intent to increase the consumption of or demand
> for such merchandise … makes …, an advertisement of any sort regarding
> merchandise, … which advertisement contains any assertion,
> representation or statement of fact which is untrue, deceptive or
> misleading, and which such person knew, or might on reasonable
> investigation have ascertained to be untrue, deceptive or misleading, shall
> be punished by a fine of not less than one thousand nor more than two
> thousand dollars; provided, that this section shall not apply to any owner,
> publisher, printer, agent or employee of a newspaper or other publication,
> periodical or circular, or to any agent of the advertiser who in good faith
> and without knowledge of the falsity or deceptive character thereof
> publishes, causes to be published, or participates in the publication of such
> advertisement.
>
> Whoever violates the provisions of this section may be enjoined therefrom
> by a petition in equity brought by the attorney general or any aggrieved
> party.

(emphasis added).

52.     The Defendants' Unlawful Acts as described hereinabove constitute the

intentional making of untrue, deceptive and misleading assertions, representations and statements

regarding the Purported Cashmere Garments in violation of the above-quoted law, M.G.L. c.

266, §91.  CCMI and its members have been and are being irreparably harmed by these actions

on the part of the Defendants, and are therefore aggrieved parties within the meaning of M.G.L.

c. 266, §91. The Defendants may therefore be enjoined, and should be enjoined, under M.G.L. c.

266, §91. from continuing Defendants' Unlawful Acts.

<u>COUNT III</u>
**(Common Law Unfair Competition)**

53.     CCMI hereby incorporates by reference, as though fully set forth herein, all of the allegations set forth in all of the other paragraphs of this Complaint.

54.     The Defendants' Unlawful Acts as described hereinabove constitute common law unfair competition in violation of Massachusetts intellectual property law,[4] that has caused, is causing, and threatens to continue to cause irreparable harm to the Cashmere Institute and its members.

55.      The Defendants' Unlawful Acts as described hereinabove constitute common law unfair competition in the form of palming off -- to wit trying to pass off goods that are not made of Cashmere and are not made in Scotland as "100% Cashmere" "Made in Scotland" -- in violation of Massachusetts law.

56.     The Defendants' Unlawful Acts as described hereinabove constitute common law unfair competition in the form of fraudulent packaging, advertisement and promotion of their products using confusingly similar trade dress to the services and products of CCMI and its Members of Cashmere  -- in violation of Massachusetts law.

57.      The Defendants' Unlawful Acts as described hereinabove constitute common law unfair competition in the form of wrongful use of a portion of  CCMI's and its Members' distinctive names in a manner that creates confusion as to the source, authenticity, and association of their goods -- in violation of Massachusetts law.

---

[4] *See Holyoke Mut. Ins. Co. v. Vibram USA, Inc.*, 2016 Mass. Super. LEXIS 298, *13-17, 33 Mass. L. Rep. 564 (2016), <u>citing</u>   "Black's Law Dictionary 813 (7th ed. 1999)(defining intellectual property as follows: "A category of intangible rights protecting commercially valuable products of the human intellect. The category comprises  primarily trademark, copyright, and patent rights, but also includes trade-secret rights, publicity rights, moral rights, **and rights against unfair competition**." (emphasis added).

## COUNT IV
### (Violation of M.G.L. c. 110H, § 13 (Anti-Dilution))

58.     CCMI hereby incorporates by reference, as though fully set forth herein, all of the allegations set forth in all of the other paragraphs of this Complaint.

59.     Over the course of more than thirty-five (35) years, the name of the Cashmere Institute has become a distinctive trade name and mark and has acquired secondary meaning and distinctive quality in the relevant Cashmere market within the meaning of the Massachusetts Anti-Dilution Statute, M.G.L. c. 110H, § 13.

60.     The Defendants' Unlawful Acts as described hereinabove, including their use of the mark "Cashmere Made in Scotland," have actually deceived and are likely to deceive the public into believing, falsely, that Defendants' falsely labeled Purported Cashmere Garments are those of, sponsored or approved or permitted by, or are in some way connected with, the Cashmere Institute or its members, all to the irreparable injury of the Cashmere Institute's trade and goodwill and to the injury of the public.

61.     The Defendants' Unlawful Acts as described hereinabove, including their use of the mark "Cashmere Made in Scotland," have diluted the Cashmere Institute Name by tarnishment and/or blurring, and have created a likelihood of such dilution by tarnishment and/or blurring in the future.  This has resulted in, and unless enjoined will continue to cause reduction of the value of the CCMI Name caused by actual or potential confusion, injury resulting from Defendants' Unlawful Acts that tarnishes the reputation associated with the plaintiff's name; and diminution in the uniqueness and individuality of the CCMI Name.

62.     The Massachusetts Anti-Dilution Statute, M.G.L. c. 110H, §13, provides that "Likelihood of injury to business reputation or of dilution of the distinctive quality of … a trade

name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

63.     CCMI is entitled to injunctive relief M.G.L. c. 110H, §13 enjoining the Defendants from continuing Defendants' Unlawful Acts as described hereinabove.

## COUNT V
**(Civil Conspiracy)**

64.     CCMI hereby incorporates by reference, as though fully set forth herein, all of the allegations set forth in all of the other paragraphs of this Complaint.

65.     In committing the hereinabove-described Defendants' Unlawful Acts, each Defendant acted in concert with the other Defendant pursuant to a common design, and each gave substantial assistance and encouragement to the other knowing that the conduct of the other constituted a breach of duty under the applicable laws prohibiting Defendants' Unlawful Acts, and that substantial assistance and encouragement was a substantial factor in causing the resulting Defendants' Unlawful Acts.

66.      In providing that substantial assistance and encouragement, each Defendant had unlawful intent, consisting of both knowledge that the other Defendant's conduct was in violation of the applicable laws prohibiting Defendants' Unlawful Acts, and intent to substantially assist or encourage that conduct by the other Defendant.

67.     Specifically, among other things, for example, as alleged hereinabove in paragraphs 27-30, Amazon was informed in writing by CCMI in 2019, was presented with actual evidence, and had actual knowledge, that it and CS Accessories were committing the Defendants' Unlawful Acts, but Amazon continued to agree with CS Accessories, and to implement agreements with CS Accessories, that substantially encouraged CS Accessories to commit, and assisted it in committing, the Defendants' Unlawful Acts.

68.     Each Defendant provided the aforesaid substantial assistance and encouragement to the other pursuant to agreements to do so that were entered into with aforesaid knowledge and intent, and thereafter each Defendant continued to implement and perform under those agreements knowing that such implementation and performance was causing and enabling Defendants' Unlawful Acts by the other Defendant.

69.     By virtue of the aforesaid, the Defendants have engaged and engaged in a concerted action conspiracy to violate federal and Massachusetts state laws prohibiting Defendants' Unlawful Acts.

70.     That conspiracy has caused and is causing irreparable harm to CCMI, its members, the reputation of Cashmere, the integrity of the Cashmere garment market, and the general public.   That harm is not adequately compensible in money damages, and requires injunctive relief to alleviate, which CCMI seeks in this case.

## COUNT VI
### (Vicarious Liability)

71.     CCMI hereby incorporates by reference, as though fully set forth herein, all of the allegations set forth in all of the other paragraphs of this Complaint.

72.     During the period in which the Defendants' Unlawful Acts have occurred and are occurring, the Defendants have each had, and now have, contracts with the other that gave and give each Defendant the ability and the right to control certain activities of the other Defendant, and made and make each Defendant the agent of the other in certain respects, including activities and in certain respects constituting, related to, and/or necessary to, the commission of the Defendants' Unlawful Acts by the other Defendant.

73.     As a result each Defendant is vicariously liable, and jointly and severally responsible, for the Defendants' Unlawful Acts, including their relevant intellectual property violations, which include unfair competition, false advertising, and trademark dilution, as aforesaid, and the aforesaid irreparable harm being caused to CCMI and its members, and the general public.

## COUNT VII
### (Contributory Liability)

74.     CCMI hereby incorporates by reference, as though fully set forth herein, all of the allegations set forth in all of the other paragraphs of this Complaint.

75.     Each Defendant has induced, caused or materially contributed to the other Defendants' commission of Defendants' Unlawful Acts, and is contributorily liable for them. Defendants' aforesaid misconduct has been, and continues to be, knowing and willful.

76.     As a direct and proximate result of Defendants' Unlawful Acts,   CCMI has suffered and, unless they are enjoined, will continue to suffer actual, substantial, and irreparable harm as aforesaid.

## COUNT VIII
### (Aiding and Abetting Liability)

77.     CCMI hereby incorporates by reference, as though fully set forth herein, all of the allegations set forth in all of the other paragraphs of this Complaint.

78.     Each Defendant aided and abetted the other Defendant in committing Defendants' Unlawful Acts, knew that the conduct of the other constituted a breach of duty under the applicable laws prohibiting Defendants' Unlawful Acts, knew that the other Defendant had a substantial role in an unlawful enterprise, and provided the substantial assistance and encouragement to the other Defendant knowing that such assistance was causing and enabling

the commission of the Defendants' Unlawful Acts by the other Defendant – to the degree that each cannot reasonably be held to have acted in good faith.

79.     Each Defendant's aiding and abetting of the other Defendant in committing Defendants' Unlawful Acts is causing and will continue to cause irreparable harm to CCMI and its members as aforesaid.

## COUNT IX
### (Breach of Contract against Amazon - Specific Performance)

80.     CCMI hereby incorporates by reference, as though fully set forth herein, the allegations contained in all the other paragraphs of this Complaint.

81.     As alleged hereinabove, including in paragraphs 27-30 hereof, Defendant Amazon and plaintiff CCMI entered into a valid and binding contract in March of 2019, the Amazon-CCMI Agreement, in which Amazon agreed and assumed the obligation to stop the Defendants' Unlawful Acts by, *inter alia*, preventing the sale of the Purported Cashmere Garments on Amazon's websites until they were properly labeled.

82.     Thereafter, Defendant materially breached the Amazon-CCMI Agreement, and has continued to breach the Amazon-CCMI Agreement, by failing to prevent the sale of the Purported Cashmere Garments on Amazon's websites until they are properly labeled.

83.     As a direct and proximate result of defendants' continuing breaches, CCMI and its members have suffered and will continue to suffer actual, substantial, and irreparable harm, including but not limited to loss of customer goodwill and loyalty.  Monetary damages are an insufficient remedy for these breaches in that they cannot fully and adequately compensate CCMI or its members for the continuing damage to the value of Cashmere's  goodwill and reputation, and CCMI is therefore entitled to an order of specific performance of the Amazon-CCMI Agreement.

84.     Absent injunctive relief enjoining Amazon's aforesaid breaches of the Amazon-CCMI Agreement, and ordering specific performance of those obligations by Amazon, those aforesaid material breaches will continue to cause irreparable harm to CCMI, its Members, and the general public, including but not limited to lost sales of legitimate Cashmere goods, and long-term damage to the reputation of Cashmere.

**COUNT X**
**(Promissory Estoppel against Amazon - Specific Performance)**

85.     CCMI hereby incorporates by reference, as though fully set forth herein, the allegations contained in all the other paragraphs of this Complaint.

86.     Amazon promised, in its March 26, 2019 reply to CCMI referenced in paragraphs 28-30 hereof, to stop the Defendants' Unlawful Acts and prevent the sale of the Purported Cashmere Garments on Amazon's websites until they were properly represented, advertised and labeled as 100% Acrylic (the "Amazon promise").

87.     In doing so, Amazon made an unambiguous promise which it should have reasonably expected to "induce action or forbearance of a definite and substantial character" on the part of CCMI, and the promise in fact induced such action or forbearance. As a result, injustice can be avoided only by enforcement of the promise.

88.     At that time and thereafter, Amazon intended CCMI to rely on the Amazon promise, and CCMI did in fact reasonably relied to its detriment on the aforesaid Amazon promise.

89.     As a result of Amazon's failure to keep the Amazon promise, CCMI and its members have suffered and, unless the Amazon promise is enforced will continue to suffer, actual, substantial, and irreparable harm as aforesaid, including but not limited to damage to lost sales of legitimate Cashmere goods, and long-term damage to the reputation of Cashmere.

90.     Under these circumstances, CCMI is fairly entitled to injunctive relief against Defendant Amazon ordering it to stop the Defendants' Unlawful Acts by, and prevent the sale of the Purported Cashmere Garments on Amazon's websites until they are properly represented, advertised and labeled as 100% Acrylic.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff CCMI respectfully requests that the Court, preliminarily enjoin, enter thereafter enter judgment in its favor against the Defendants awarding it:

1.      permanent declaratory and injunctive relief requiring the Defendants to cease the Defendants' Unlawful Acts, including, *inter alia*, that they cease and desist from, and stop:

(a)     advertising garments that are made of synthetic material (such as acrylic) as, or representing them to be, "Cashmere," "100% Cashmere," or "Cashmere Made in Scotland,"

(b)     advertising any garments that are not made of Cashmere as, or representing them to be, "Cashmere," "100% Cashmere," or "Cashmere Made in Scotland,"

(c)     selling, offering for sale, or accepting or fulfilling orders for, garments made from synthetic material (such as acrylic) that have already been advertised as, represented to be, or labeled as "Cashmere," "100% Cashmere," or "Cashmere Made in Scotland," unless and until their textile fiber content is properly and truthfully represented, advertised and labeled;

(d)     selling, offering for sale, or accepting or fulfilling orders for, garments not made of Cashmere that have already been represented to be, or have already been advertised or labeled as, "Cashmere," "100% Cashmere," or "Cashmere Made in Scotland," and

(e)     selling, offering for sale, or accepting or fulfilling orders for, garments not made of Cashmere, including garments made of synthetic acrylic that have glued-on cloth labels

affixed to them which bear the U.K. national flag, the "Union Jack," the words "*100% Cashmere*" in italics and underlined, the words "Made in Scotland" underneath that in plain arial-like typeface, and the words "DRY CLEAN OR HAND WASH COLD" or "DRY CLEAN OR HANDWASH COLD" in smaller print all-caps lettering under that, with an overall appearance as follows:





or as follows:





or as follows, using the same symbol and wording printed against a darker background:





2.      the reasonable attorneys' fees, expert witness expenses, and other costs incurred by CCMI in pursuing this action; and

3.      such other and further relief as this Court may deem just and proper, or as to which CCMI may show it is entitled at trial.

Respectfully submitted,

CASHMERE AND CAMEL HAIR
MANUFACTURERS INSTITUTE

By its attorneys,

Robert J. Kaler, Esq.
BBO No. 542040
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Telephone:  (617) 854-1443
Facsimile:  (617) 523-6850
robert.kaler@hklaw.com

Dated:  November 18, 2021

*Counsel for Plaintiff CCMI*